**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAPHANNIE BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 21-cv- |
| | ) | |
| v. | ) | |
| | ) | |
| MIDLAND FUNDING LLC, and MIDLAND | ) | |
| CREDIT MANAGEMENT INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | <u>Jury Demanded</u> |

## <u>COMPLAINT</u>

Plaintiff Daphannie Butler brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA), and alleges as follows:

## <u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA and 28 U.S.C. § 1331.

2.      Venue is proper in this District because parts of the acts and transactions occurred here and Defendants transact substantial business here.

## <u>STANDING</u>

3.      Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and that is likely to be redressed by a favorable decision in this matter.

4.      Specifically, Plaintiff suffered a concrete injury and harm to her reputation as a result of Defendants sharing of false information regarding one of Plaintiff's debts with a third party. *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 346 (7th Cir. 2018).

1

## PARTIES

5.      Plaintiff is a resident of the State of Illinois, from whom Defendants attempted to collect a delinquent consumer debt allegedly owed for a defaulted Comenity Bank/Jessica London consumer account. (the "Account")

6.      Plaintiff used the Account primarily for personal, family, and household purchases.

7.      The Account is a "debt" as that term is defined in § 1692a(5) of the FDCPA.

8.      Plaintiff is a "consumer" as that term is defined in § 1692a(3) of the FDCPA.

9.      Defendant Midland Funding, LLC ("Midland") is a Delaware limited liability company that does or transacts business in the State of Illinois. Its registered agent is Midland Credit Management, Inc., located at 1821 Walden Office Sq., Ste. 400, Schaumburg, Illinois 60173.

10.      Midland buys defaulted debts for pennies on the dollar, then attempts to collect the face value of the debts from consumers via third parties.

11.      Midland holds a collection agency license from the State of Illinois.

12.      Midland's principal business purpose is the collection of defaulted consumer debts.

13.      Midland is thus a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

14.      Defendant Midland Credit Management, Inc. ("MCM", and together with Midland, "Defendants") is a servicer of defaulted consumer debts that collects debts on behalf of purchasers of defaulted consumer debts, such as Midland in this case, via the mailing of collection letters and telephone communications made to debtors.

2

15.     MCM is a Kansas corporation that does or transacts business in Illinois. Its registered agent is Illinois Corporation Service Co., located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

16.     MCM maintains and/or owns a website, www.midlandcredit.com.

17.     MCM's website contains, in part, the following statements:

## Who is Midland Credit Management (MCM)?

Midland Credit Management (MCM) is a company that helps consumers resolve past-due financial obligations. MCM has serviced millions of collection accounts over the years with the goal of helping consumers achieve financial freedom. MCM works with consumers and also partners with Midland Funding LLC, one of the nation's largest buyers of unpaid debt.

If you received a letter from MCM, this means a creditor you had an account with has closed your account and sold it to one of our family of companies. You will need to work with MCM, not your original creditor, to resolve your account.

MCM empowers consumers by creating payment plans that work for them. We have helped over 7 million consumers work toward improved financial health.

Midland Credit Management, Inc., "About Us", https://www.midlandcredit.com/help-center/faqs/, Accessed on 26 June 2020.

18.     MCM is licensed as a collection agency in the State of Illinois.

19.     MCM manages and services charged-off consumer debt portfolios for Midland and regularly collects or attempts to collect debts on behalf of Midland.

20.     MCM is a "debt collector" as that term is defined in § 1692a(6) of the FDCPA.

## FACTUAL ALLEGATIONS

21.     According to Defendants, Plaintiff incurred charges on the Account but failed to make timely payments, and the Account went into default.

22.     According to Defendants, Midland subsequently acquired the Account from the original creditor.

23.     Defendants then began efforts to collect the Account.

24.     Plaintiff set up a payment plan with Defendants where she agreed to electronic monthly ACH withdrawals.

25.     An ACH withdrawal is a check or other postdated payment instrument as that term is used at §1692f(2) of the FDCPA.

26.     Plaintiff agreed to electronic payments postdated by more than five days.

27.     Defendants began withdrawing from Plaintiff's account.

28.     On or about September 9, 2020, Defendants mailed Plaintiff a letter (the "September Letter"). (Exhibit A, September Letter).

29.     Plaintiff received the September Letter sometime thereafter.

30.     The September Letter conveyed information about the Account, including an account number, the identity of the creditor, and an amount due.

31.     The September Letter was a communication as that term is defined at §1692a(2) of the FDCPA.

32.     The September Letter indicated that Defendants planned to withdraw $23.71 from Plaintiff's account, but the date listed as the "payment due date" was "10-18-2019."

33.     Similarly, on October 9, 2020, Plaintiff received another letter (the "October Letter"), with the "Payment due date" listed as "10-18-2019". (Exhibit B, October Letter)

34.     Defendants failed to warn Plaintiff about the payments they ultimately took out in September 2020 and October 2020.

35.     15 U.S.C. § 1692f of the FDCPA provides as follows:

4

**Unfair practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit. . . .**

36.     Defendants used unconscionable means to collect a debt, in violation of 15 U.S.C. §1692f(2), when it failed to inform Plaintiff about when they were ultimately going to take payments out.

37.     The September Letter and October Letter also contain electronic payment authorization instructions, including information about Plaintiff's bank account, the amount of payments, and information regarding Plaintiff's right to revoke or modify the arrangement.

38.     Defendants require the consumer to provide a bank account in order to authorize electronic payments.

39.     Defendants obtained advanced authorization to process electronic transfers from bank accounts.

40.     Defendants withdraw the payments from the consumer's bank account over time.

41.     Thus, Defendants electronic payment authorization is a preauthorized electronic transfer as defined by Regulation E of the Electronic Funds Transfer Act.

42.     The September Letter and October Letter also stated as follows:

Your electronic payment(s) will be automatically deducted from your credit/debit card account ending in 3968. Call at least 3 business days before the due date to cancel or modify your payment(s).

*See* (Ex. A, Ex. B).

5

43.     Plaintiff is not required to contact Defendants in order to revoke her electronic transfer authorization.

44.     Plaintiff is not required to cancel a payment arrangement by phone.

45.     Regulation E applies to Plaintiff's bank account, as it applies to all consumer bank accounts.

46.     Regulation E provides important consumer rights with respect to preauthorized transfers.

47.     12 CFR 205.10(c)(1), states in relevant part:

> **Preauthorized transfers**
>
> **(c) Consumer's right to stop payment**
>
>> **(1) Notice. A consumer may stop payment of a preauthorized electronic fund transfer from the consumer's account by notifying the financial institution orally or in writing at least three business days before the scheduled date of the transfer. . . .**

48.     Plaintiff can cancel an Electronic Payment Authorization orally or in writing.

49.     Plaintiff can also cancel such authorization with her own financial institution and does not even need to communicate with Defendants to cancel the Electronic Payment Authorization.

50.     Defendants are in effect making the consumer call in, and speak to a debt collector, before allowing her to cancel an authorized payment, providing the debt collector one more attempt to collect the debt prior to cancellation of a payment plan.

51.     Defendants' practice, as communicated by it to consumers, has the effect of discouraging consumers from ever cancelling a payment authorization.

52.     15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

53.     Defendants made a materially false statement, in violation of 15 U.S.C. §§ 1692e and 1692e(10) when they misstated Plaintiff's right to cancel an Electronic Payment Authorization with her own financial institution, or in writing.

54.     15 U.S.C. § 1692f of the FDCPA provides as follows:

**Unfair practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

55.     Defendants used unfair means to attempt to collect a debt, in violation of 15 U.S.C. § 1692f, when they stated that Plaintiff must contact them by phone in order to cancel an electronic payment from her bank account but failed to also inform her she may contact her own financial institution.

56.     An unsophisticated debtor—who would be unaware that Regulation E permits her to cancel the payments by contacting her own bank—could conclude that the sole means of cancellation listed in the letter (calling FBCS) is the only one available. *Williams v. NCB Mgmt. Servs., Inc.*, No. 17 C 6756, 2018 WL 3244097, at *2 (N.D. Ill. July 3, 2018); *Koval v. Harris & Harris, Ltd.*, 2017 WL 1321152, at *3 (N.D. Ill. Apr. 5, 2017).

57.     Defendants could have advised Plaintiff that Federal law gives her the right to stop payments by contacting the financial institution that holds her account in order to avoid providing inconsistent and false information.

58.     Violations of the FDCPA which would influence a consumer's decision to pay a debt in response to a dunning letter, are material. *See Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (citing *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009)). Here, Defendants false statement that Plaintiff must contact them directly to cancel her payment, instead of contacting her own financial institution, would discourage a consumer from cancelling a payment so as to avoid communication with a debt collector, many of whom use aggressive techniques to collect a debt and may resist allowing a consumer to cancel a payment plan.

59.     Defendants' requirement that a consumer speak with a collection agent prior to cancelling an electronic payment causes negative emotions of frustration, annoyance, agitation, and other emotional distress.

60.     Thereafter, in response to collection attempts by Defendants, Plaintiff consulted with the attorneys at Community Lawyers, LLC, who, on January 2, 2021 sent a letter to Defendants indicating that Plaintiff disputed the Account. (Exhibit C, Dispute Letter).

61.     Defendants received Plaintiff's dispute on January 7, 2021. (Exhibit D, Certified Tracking).

62.     Plaintiff's dispute letter informed Defendants that Plaintiff was represented by counsel in connection with the Account.

63.     Thereafter, on January 11, 2021, Defendants sent another collection letter directly to Plaintiff regarding the Account. (Exhibit E, January Collection Letter).

64.     Plaintiff had been assured by her attorney that once she was represented she would no longer have to engage with debt collectors on her own.

65.     Now she was in receipt of a letter from Defendants indicating they were permitted to continue their collection efforts directly against Plaintiff and demanding that she contact them.

66.     Defendants' letter robbed Plaintiff of the benefit of having an attorney.

67.     Defendants invaded Plaintiff's privacy by reaching out to her directly.

68.     An unsophisticated consumer would have believed that Defendants could now contact her regardless of whether she was represented by an attorney.

69.     Defendants knew or should have known that Plaintiff was represented by counsel because Defendant received notice on January 7, 2021 stating that Plaintiff had acquired legal representation.

70.     15 U.S.C. § 1692c(a) of the FDCPA provides as follows:

> **(a)  Communication with the consumer generally**
>
> **Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—**
>
> **. . . (2) <u>if the debt collector knows the consumer is represented by an attorney with respect to such debt</u> and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer. . . .**

(emphasis added)

71.     Defendants communicated with a consumer directly, in violation of 15 U.S.C. §1692c(a)(2), while knowing the consumer was represented by an attorney.

72.     Plaintiff's dispute letter also stated, in part, that the amount reported by Defendants for the Account is not accurate.

9

73.     A statement that "the amount reported is not accurate" evinces the intention to dispute the validity of at least a portion of the purported debt. *Evans*, 889 F.3d at 377. "There is simply no other way to interpret this language." *Id.*

74.     Thereafter, on January 22, 2021, Defendants communicated credit information regarding Account to the TransUnion consumer reporting agency, including the balance, an account numbers and the date reported. (Exhibit F, Redacted Excerpt from Plaintiff's TransUnion Report).

75.     Defendants failed to communicate that Plaintiff disputed the Account when they communicated other information to TransUnion regarding the Account.

76.     15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

77.     Defendants failed to communicate a dispute to the TransUnion credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute and communicated other information regarding the Account to the credit reporting agency.

78.     Credit reporting by a debt collector constitutes an attempt to collect a debt. *E.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a

consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

79.     Defendants defamed Plaintiff's credit reputation by communicating false credit information.

80.     A debt reported with no dispute results in a much lower credit score than a report of both the debt and the dispute. *Saunders v. Branch Banking and Trust Co. of VA*, 526 F. 3d 142, 146-47 (4th Cir. 2008).

81.     Midland bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including MCM. *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 WL 1382174, at *7 (7th Cir. 2016).

82.     Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *See*, *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I- FAIR DEBT COLLECTION PRACTICES ACT

83.     Plaintiff re-alleges the paragraphs above as if set forth fully in this count.

84.     Defendants used unconscionable means to collect a debt, in violation of 15 U.S.C. §1692f(2), when they failed to inform Plaintiff about when they were ultimately going to take payments out.

85.     Defendants made a materially false statement, in violation of 15 U.S.C. §§ 1692e and 1692e(10) when they misstated Plaintiff's right to cancel an Electronic Payment Authorization with her own financial institution, or in writing.

86.     Defendants used unfair means to attempt to collect a debt, in violation of 15 U.S.C. § 1692f, when they stated that Plaintiff must contact them by phone in order to cancel an

electronic payment from her bank account but failed to also inform her she may contact her own financial institution.

87.     Defendants communicated with a consumer directly, in violation of 15 U.S.C. §1692c(a)(2), while knowing the consumer was represented by an attorney.

88.     Defendants failed to communicate a dispute to the TransUnion credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute and communicated other information regarding the Account to TransUnion.

WHEREFORE, Plaintiff respectfully asks this Court enter judgment in Plaintiff's favor and against Defendants as follows:

A.     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

B.     Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

C.     Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

By: /s/ *Daniel Brown*
      Daniel Brown

Daniel Brown
Main Street Attorney, LLC
PO Box 247
Chicago, IL 60690
P: (773) 453-7410
E:daniel@mainstreetattorney.com